# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 5, 2008

## MARCUS JOHNSON v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Shelby County
#### No. 01-07733    Carolyn Wade Blackett, Judge

---

### No. W2007-02664-CCA-R3-PC  - Filed November 10, 2008

---

The petitioner, Marcus Johnson, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions for first degree felony murder, especially aggravated robbery, and aggravated assault.  On appeal, he contends that he received the ineffective assistance of trial counsel.  Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Marcus Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tracye Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

We glean the following facts from this court's opinion in the petitioner's direct appeal: On the night of December 28, 2000, the petitioner and his co-defendant, Travis Parson, went to the Discount Shop in Memphis.  State v. Marcus Johnson, No. W2002-00987-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 780, at *2 (Jackson, Sept. 4, 2003), perm. to appeal denied, (Tenn. 2004).  Armed with guns, they stood in the doorway and fired into the store, seriously injuring the store manager and killing a clerk.  Id. at **3-4.  They also took fourteen hundred to sixteen hundred dollars from a cigar box underneath the counter.  Id. at *6.  Carolyn Scott, who arrived at the store shortly after

the robbery, told police that she saw a blue Ford Contour leaving the store parking lot. Id. at \*4. She later identified the petitioner as the man she saw driving the car. Id. at \*5. Police investigating the crime scene found a driver's license in the parking lot, and the license did not belong to the petitioner, his co-defendant, or either victim. Id. However, fingerprint analysis on the license revealed the petitioner's thumb print. Id. The petitioner became a suspect through Crime Stoppers tips, and the police arrested him on December 29, 2000. Id. The petitioner gave three statements to the police. Id. at \*8. In the first statement, he said he was present during the robbery and acted as the lookout for a man named Tye Owens, who committed the crimes. Id. at \*\*9-10. In his second statement, the petitioner admitted that he had lied about Owens committing the crimes and said that he went to the store with Parson, who took cigarettes from the store. Id. at \*11. In his third statement, the petitioner said that he and Parson went to the Discount Shop armed with an AK-47 assault rifle and a shotgun, that he held the door open, that Parson fired the guns into the store, and that Parson took money from a cigar box and cigarettes. Id. at \*\*12-13. At his trial, the petitioner testified that he and Parson went to the store armed with an AK-47 assault rifle and a shotgun, that he refused to go into the store, that Parson "snatched" the assault rifle from him, that Parson fired both guns into the store, and that Parson took cigarettes and money from behind the counter. Id. at \*7. The petitioner also claimed that before the robbery, Parson found a driver's license. Id. at \*\*7-8. The petitioner held the license briefly, gave it back to Parson, and Parson intentionally left the license in the store parking lot. Id. at \*8.

The jury convicted the petitioner, who was tried separately from Parson, of first degree felony murder and two counts of especially aggravated robbery, and the trial court sentenced him to an effective sentence of life plus twenty years. Id. at \*\*1-2. On appeal, a panel of this court affirmed the petitioner's murder conviction and one of his especially aggravated robbery convictions but modified the second especially aggravated robbery conviction to aggravated assault and remanded the case to the trial court for sentencing as to that offense. Id. at \*2. Subsequently, the petitioner filed a timely petition for post-conviction relief. The trial court appointed counsel, and counsel amended the petition, claiming that the petitioner received the ineffective assistance of trial counsel.

At the evidentiary hearing, trial counsel testified that she had been practicing law since 1993 and that she was appointed to represent the petitioner on October 8, 2001. At that time, sixty to sixty-five percent of counsel's practice involved criminal law, and counsel had participated in more than ten murder trials. On October 25, 2001, counsel filed a motion for discovery, and she received discovery materials from the State on November 21, 2001, about five months prior to the petitioner's trial. Counsel stated that the most damaging evidence against the petitioner was his three statements to police. The petitioner did not have an alibi, and counsel stated that the defense's goal was "to try and attack the state's case through impeachment, both of any eyewitnesses and the taking of the statements and things of that nature." Counsel did not try to challenge the admissibility of the driver's license because she saw no basis to suppress it.

Counsel testified that on November 30, 2001, the trial court appointed an investigator to assist the defense. The investigator attempted to speak with the surviving victim, and counsel did not know if the investigator spoke with Carolyn Scott. The investigator did a thorough investigation

-2-

and had adequate time to investigate the case. Counsel said she had sufficient time to prepare adequately for trial. Counsel met with the petitioner a total of six times, twice in jail and four times in court. She filed numerous pretrial motions, including motions for discovery, exculpatory evidence, speedy trial, and jury instructions on lesser included offenses. Counsel gave the petitioner a copy of discovery materials and discussed discovery with his family. Counsel advised the petitioner about the consequences of testifying at trial, and it was the petitioner's decision to testify. In preparation for the petitioner's testimony, counsel went over the petitioner's statements with him, and she said she usually did "some type of role playing" with her clients.

On cross-examination, counsel testified that she reviewed the discovery materials and reviewed them with the petitioner. The State offered to allow the petitioner to plead guilty in return for a life sentence, but the petitioner turned down the offer. Counsel acknowledged that she cross-examined the State's witnesses and objected when she thought it was appropriate.

The then twenty-five-year-old petitioner testified that counsel "didn't do her job . . . . She didn't, you know, speak up for me right in my behalf," and he acknowledged that his co-defendant was not convicted of first degree murder.[1] The petitioner completed the eighth grade and attended special education classes in school, and he told counsel about his educational background. He also told counsel about the facts of his case and that he did not understand everything that was happening. However, a psychiatrist or a psychologist never evaluated him. Counsel met with the petitioner twice in jail to discuss his case, and each meeting lasted between five and ten minutes. She also gave him a copy of discovery materials. The petitioner told counsel that he was intoxicated when he gave his first statement to the police and that he gave his other two statements because the police threatened "to put it all on me." The petitioner was only eighteen years old when the police arrested him, and he told counsel he was not guilty of first degree murder. Counsel recommended that the petitioner testify, but she did not tell him the prosecution would be allowed to cross-examine him. The petitioner wanted counsel to subpoena his "baby momma" and her mother because they would have testified that he was with them the night of the crimes. The petitioner stated that the defense investigator never met with him in jail.

On cross-examination, the petitioner acknowledged that he told the police he had completed the tenth grade and was working on obtaining his GED. He also acknowledged that he could read and write. The petitioner never told the police about his alibi, but he told counsel about it. He also did not mention his alibi witnesses at trial because counsel told him "there was no reason for me to call them there." Counsel answered the petitioner's questions about discovery. The police officers tried to take a fourth statement from the petitioner, but he asked for an attorney. He said that was not the first time he asked for a lawyer and that the police read him his rights after he gave his statement.

_____

[1]Like the petitioner, Travis Parson was indicted for premeditated murder, felony murder, and two counts of especially aggravated robbery. See State v. Travis Parson, No W2002-02743-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 213, at *1 (Jackson, Mar. 3, 2004). A jury convicted him of one count of criminally negligent homicide and two counts of especially aggravated robbery. Id. at *2.

In denying the petitioner's petition for post-conviction relief, the post-conviction court noted that trial counsel met with the petitioner "on occasion," received discovery, filed pretrial motions, and called and cross-examined numerous witnesses at trial. The court concluded that the petitioner failed to show that counsel did not have adequate time to prepare for trial or that her performance was deficient. The court concluded that he did not receive the ineffective assistance of counsel.

## II. Analysis

The petitioner contends that he received the ineffective assistance of counsel because his attorney had only four months to prepare for trial and failed to prepare for trial adequately. He argues that counsel failed to argue in the motion to suppress his statements that the police coerced his confessions. Counsel also failed to attempt to suppress the petitioner's statements based upon his mental health and failed to investigate a defense based on mental health grounds. Finally, he argues that defense counsel also did not have a "coherent trial strategy." The State argues that the trial court properly concluded the petitioner did not receive the ineffective assistance of counsel. We agree with the State.

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

The petitioner claims that he received the ineffective assistance of counsel because his trial attorney failed to prepare for trial adequately. However, counsel testified that an investigator

assisted the defense and did a thorough investigation, that she filed numerous pretrial motions, that she reviewed discovery materials, and that she reviewed discovery materials with the petitioner. Counsel also testified that she had adequate time to prepare, and the post-conviction court obviously accredited her testimony.

The petitioner contends that counsel should have alleged in his motion to suppress that his statements were coerced and that suppression was warranted due to his mental health. The petitioner's motion to suppress has not been included in the record on appeal; however, the transcript for the suppression hearing has been included. According to the transcript, counsel argued to the trial court that the petitioner was intoxicated at the time of his first statement and that the petitioner gave the remaining two statements due to "intimidating methods used by the police officers that pressured Mr. Johnson into giving those statements." Therefore, despite the petitioner's claim to the contrary, the record reveals that counsel did argue that the petitioner's statements were coerced. Furthermore, this court addressed the issue of coercion in the petitioner's direct appeal and concluded that the petitioner's statements "were not the product of intimidation, coercion, or deception." Johnson, No. W2002-00987-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 780, at *23. Therefore, the petitioner has failed to show that counsel rendered deficient performance or that he was prejudiced by any deficiency.

The petitioner also contends that counsel should have argued suppression of the statements was warranted by the petitioner's mental state. However, the petitioner failed to present any evidence regarding his mental health at the evidentiary hearing. Therefore, he has failed to show that he was prejudiced by any deficiency.

Finally, the petitioner contends that he is entitled to post-conviction relief because trial counsel had "no coherent trial strategy." At the evidentiary hearing, the petitioner argued that he had alibi witnesses who could have testified on his behalf. However, he failed to present the witnesses at the hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Other than an alibi defense, the petitioner has not alleged what defense counsel should have presented at trial. Therefore, we can find no evidence to preponderate against the post-conviction court's finding that counsel was not ineffective.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE